### HARTSFIELD v. CHAMBLIN.

1. PAROL EVIDENCE—WRITTEN CONTRACT.—Parol testimony of agreements, afterwards reduced to writing and signed by the parties, and under which they acted for years, is inadmissible, where such contract is unambiguous, covers the whole subject-matter, and shows upon its face for what consideration and what purpose it was given.

---

* Honorable Eugene B. Gary was elected by the Legislature in December, 1893, to succeed Mr. Justice McGowan, whose term expired July 29, 1894. All the cases in this volume were heard while Justice McGowan was in commission, except the cases of *State ex rel. George* v. *Aiken* and *Melchers* v. *Bates*, which were heard at an extra session of the court in September, 1894. Mr. Justice McGowan took no part in any of the decisions filed subsequent to July 29th, and Mr. Justice Gary took no part in any of the decisions, excepting the two above mentioned and those in which he is stated to have taken part, either by substitution under special appointment, or in cases submitted on printed papers.—REPORTER.

2. PETITION FOR REHEARING granted, some material questions having been possibly overlooked.

Before WITHERSPOON, J., Spartanburg, October, 1893.

Proceeding by R. S. Hartsfield and others against A. D. Chamblin, administrator, and others. The facts are thus stated in the decree of the Circuit Judge:

Parol testimony was admitted, over the plaintiffs' objection, to prove the agreement, as claimed by said defendants, by the declaration of Eliza J. A. Woodruff and C. P. Woodruff, as well as to show that A. D. Chamblin did not owe the $1,500 note payable to C. P. Woodruff, hereafter referred to. The written evidence introduced consisted of an indenture, under seal, executed by C. P. Woodruff and A. D. Chamblin, October 4, 1872, recorded October 30, 1872, and the sealed note of A. D. Chamblin, of the same date, for $1,500, payable to C. P. Woodruff, or bearer. By the terms of the indenture, C. P. Woodruff conveyed, with the usual warranty, 100 acres of land, including his residence, to A. D. Chamblin, in consideration of $1,500. C. P. Woodruff reserved the use and occupation of two rooms in the dwelling for himself and wife, and A. D. Chamblin and family were to occupy the balance of said dwelling. A. D. Chamblin was to cultivate the land as he thought best, was to provide for the wants and necessities of C. P. Woodruff and wife during their lives, or the life of the survivor, and was to pay the customary rent annually during the lifetime of C. P. Woodruff and wife, in consideration of which A. D. Chamblin was not to pay any interest on the purchase money, and was to have three years after the death of C. P. Woodruff and his wife, Eliza J. A. Woodruff, to pay said purchase money. The note of A. D. Chamblin for $1,500, of the same date, payable to C. P. Woodruff, or bearer, above referred to, provides as follows: "This obligation not to be paid until three years after the death of said C. P. Woodruff and wife, Eliza J. A. Woodruff. Interest to be paid annually by the rent to the place now where I live." It is endorsed upon said note that interest has been paid to November 13, 1883.

Before considering whether the Probate Court has violated

the above rule in admitting parol testimony, as contended by plaintiffs, it will be proper to refer to certain facts and circumstances disclosed by the evidence before the Probate Court. It appears that C. P. Woodruff and his wife, Eliza J. A. Woodruff, never had any children; that M. Lou Fleming, a niece of Eliza J. A. Woodruff, lived with, and was treated by, C. P. Woodruff and his wife, Eliza J. A. Woodruff, as their child, for several years prior to her marriage to A. D. Chamblin, one of the defendants above named, in 1886. After her marriage, she and her husband lived with A. D. Chamblin's father for some two years. In 1872, A. D. Chamblin, the husband, had lumber hauled, and was about to commence the erection of a dwelling for himself and wife on his father's land. About the same period, C. P. Woodruff and wife induced A. D. Chamblin and wife to abandon their purpose of building, and to move to the residence of C. P. Woodruff and wife, where A. D. Chamblin and wife have ever since lived.

The Probate Court admitted, over plaintiffs' objection, parol testimony as to the declarations of C. P. Woodruff and wife, that everything they had at their deaths, or the death of the survivor, would belong to A. D. Chamblin and wife, and that the execution of the $1,500 note by A. D. Chamblin was merely required as a security for the performance by A. D. Chamblin and wife of their agreement to maintain and care for C. P. Woodruff and wife during their natural lifetime. The evidence shows that A. D. Chamblin and wife were kind and attentive to C. P. Woodruff and wife during their lives. C. P. Woodruff died in 1886, and by his will left all of his property to his wife, Eliza J. A. Woodruff. Eliza J. A. Woodruff died in 1890, and the defendant, A. D. Chamblin, was duly appointed administrator of her estate. The indenture between C. P. Woodruff and A. D. Chamblin, and the sealed note of A. D. Chamblin for $1,500 to C. P. Woodruff, dated October 2, 1872, are clear and unambiguous in setting forth the terms upon which C. P. Woodruff sold, conveyed, and put A. D. Chamblin in possession of the 100 acres of land, and including the dwelling.

The indenture and the note introduced as evidence by A. D.

Chamblin and wife show that A. D. Chamblin's $1,500 note represents the purchase money of the land. The parol evidence as to the declaration of C. P. Woodruff and wife, admitted over plaintiffs' objection, must have been introduced for the purpose of and could have no other effect than to show that A. D. Chamblin did not owe anything on the $1,500 note, executed and made payable by him to C. P. Woodruff. Such parol testimony is in direct conflict with, and in contradiction of, the express terms of the indenture and note introduced by A. D. Chamblin as evidence of his claim to the property of Eliza J. A. Woodruff, deceased. But there are facts and circumstances appearing from the evidence before the Probate Court that are inconsistent with the position taken by A. D. Chamblin, that he does not owe anything upon the $1,500 note. Upon the death of C. P. Woodruff, the $1,500 note of A. D. Chamblin was appraised "good," as a part of his estate. The note was found among the papers of Eliza J. A. Woodruff, when she died at her brother's, where she had remained twelve or eighteen months prior to her death. A. D. Chamblin, as administrator, had the note appraised as part of the estate of Eliza J. A. Woodruff. It is true, that he protested against having the note appraised as a part of Eliza J. A. Woodruff's estate, but it nevertheless appears upon the appraisement bill with other notes due the estate of Eliza J. A. Woodruff. The interest is endorsed as having been paid on the note up to March 13, 1883. If A. D. Chamblin's $1,500 note, representing the purchase money of the land, was not to be paid according to its terms, it is difficult to understand how A. D. Chamblin could neglect to incorporate with the other stipulations in the indenture, executed the same day, a matter of such consequence to himself. The decree of the Probate Court is evidently based upon the parol testimony objected to, tending to show that A. D. Chamblin does not owe anything upon the $1,500 note in evidence, executed and delivered by him to C. P. Woodruff.

*Messrs. Bomar & Simpson,* for appellants.

*Messrs. S. M. Pilgram, Nicholls & Jones,* and *A. E. Moore,* contra.

July 26, 1894. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. It will be difficult to understand this case, without a short statement of the principal facts. It appears that the Woodruffs, husband and wife, an aged couple, with a comfortable property, had no children or lineal descendants. That M. Lou Fleming, a niece of Mrs. Woodruff, lived with, and was treated by the Woodruffs as their child, for several years prior to her marriage to A. D. Chamblin. After her marriage, she left the family for a time. When, however, Chamblin was making arrangements to go permanently to house-keeping, the Woodruffs, by certain declarations, orally made, as to what they would do for them, if they, the Chamblins, would move to their home and live with them during their lives, viz: that what property they, the Woodruffs, had, at their deaths or the death of the survivor, would belong to them, the Chamblins. Under these declarations, they moved into the Woodruff premises. Up to the time when the Chamblins moved into the house of the Woodruffs, there seems not to have been any memorandum or written agreement between the parties. But soon after the arrangement spoken of took definite shape, and on October 2, 1872, the old gentleman, C. P. Woodruff, executed a deed to A. D. Chamblin for his "home tract of land," including the residence (except the use and occupation of two rooms, which were reserved for Mr. and Mrs. Woodruff), in consideration of $1,500, which was secured by the note of Chamblin; and he and his family were to occupy the other rooms of the house— to cultivate the land as he thought best, and to provide for the wants of the Woodruffs during their joint lives or the life of the survivor, and was to pay the customary rent annually, during the lives of C. P. Woodruff and wife, in consideration of which, Chamblin was *not* to pay any interest on the note for the purchase money, and was to have three years after the death of the survivor of the Woodruffs, to pay said purchase money. The note itself provides as follows: "Interest to be

paid annually by the rent of the place now where I live." It is endorsed on the note that interest has been paid to November 13, 1883. Under this arrangement, the Chamblins have lived up to this time.

C. P. Woodruff died in 1886, and by his will left all of his property to his wife, Eliza J. A. Mrs. Woodruff lived until 1890, when she died, and Chamblin was appointed her administrator; and this proceeding was instituted in the Probate Court to compel Chamblin, as the administrator of Mrs. Woodruff, to account for her estate to her general heirs at law. But the said Chamblin denied, and still denies, his liability to account for the estate of Mrs. Woodruff, for the reason, as stated, that the whole of said estate belongs to him and his wife, under the parol declarations or agreements, made at different times, and under different circumstances, in somewhat the same general terms before indicated, viz: that if the Chamblins would move into the family residence of the Woodruffs, and remain with them as long as they or either of them lived, they, the Chamblins, would have all their property, or words to that effect; and alleging faithful performance of said agreement, upon their part, the said administrator Chamblin claims the whole estate for himself and wife.

Upon the issue thus made, there was much testimony in the Probate Court, which will be found printed in the Brief. The plaintiffs made earnest objection to the admission of the parol declarations of intention on the part of the Woodruffs, during their lives; but the aforesaid parol declarations, as well as the deed of the homestead, and the note of Chamblin for $1,500, of even date with the deed, offered in evidence by the administrator, Chamblin, were admitted by the judge of probate, who sustained the claim of the administrator, Chamblin, and directed that the entire estate of Mrs. E. J. A. Woodruff should be turned over to A. D. Chamblin and his wife, after paying the costs of the settlement in the Probate Court, &c. From this decree the plaintiffs appealed to the Circuit Court of Common Pleas upon several grounds, but principally because of alleged "error in *not* holding that the written contract between C. P. Woodruff and A. D. Chamblin was the only contract between

them, and that Chamblin and wife could not hold the whole estate to the exclusion of the other heirs of Mrs. Woodruff," &c.

The appeal, upon the record from the Probate Court, came up for a hearing in the Circuit Court by his honor, I. D. Witherspoon, who, after making a very full and careful statement of the facts from the evidence (which I hope will appear in the report of the case), *reversed the judgment* of the Probate Court, holding as follows: "It seems to me that the Probate Court *erred* in admitting the parol testimony, objected to by the plaintiffs on two grounds: (1) Because it appears upon the face of the $1,500 note that said note, and the indenture of the same date, were executed *after* A. D. Chamblin had moved to the residence of C. P. Woodruff and wife. This is indicated by the expression in Chamblin's note, 'interest to be paid annually by the rent of the place now where I live.' It will be conclusively presumed that all previous oral agreements between the parties as to the terms or conditions upon which A. D. Chamblin was to move to the residence of C. P. Woodruff and wife, are embraced in the indenture and note of October 2, 1872. (2) Because the oral testimony objected to by plaintiffs, not only contradicts but nullifies the express terms of the $1,500 note, executed by A. D. Chamblin to C. P. Woodruff, October 2, 1872, introduced in evidence. I conclude as matter of law that the Probate Court erred in admitting parol evidence to vary and contradict the written evidence submitted in the above entitled case, as alleged in the plaintiffs' grounds of appeal. It is, therefore, ordered, that the same is hereby reversed," and ordering copy to the Probate Court.

From this decree the administrator, Chamblin, appeals to this court upon various exceptions; but they are all printed in the record, and practically make really only one question, *charging* the Circuit Judge with error: "In holding that the Probate Judge had allowed parol evidence introduced to vary and contradict written agreements, when the only parol evidence introduced was for these three purposes, and was competent under the laws of South Carolina, namely: (1) To show a contract between the Chamblins and the Woodruffs as to *all* the property of the Woodruffs other than that embraced in the

deed, when there was no written agreement as to any of said property.  (2) To show that the note for $1,500, though executed and delivered to Woodruff, was never to become binding on Chamblin, except in a certain contingency.  (3) Even granting the note to be a binding obligation on Chamblin, and given by him for the purchase of the land, to show that such note, together with all the other property owned by either of the Woodruffs at death, should go to the Chamblins," &c.

As it seems to us, this case furnishes a good illustration of the important principle of evidence, universally announced by all elementary writers upon the subject, somewhat as follows: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversations or declarations at the time when it was completed or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, *is rejected.*  In other words, as the rule is now more briefly expressed, parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." 1 Greenl. Evid., § 275.  Or, as it is expressed by the Scotch lawyers: "Writing cannot be cut down or taken away by the testimony of witnesses."  As we understand it, there was here no *uncertainty* as to the object or extent of the arrangement made by the written instruments, signed by the parties, and duly recorded, so far as was necessary.  As stated by the Circuit Judge: "The indenture between C. P. Woodruff and A. D. Chamblin, signed by them both, and the sealed note of A. D. Chamblin for $1,500 to C. P. Woodruff, dated October 2, 1872, are clear and unambiguous in setting forth the terms upon which C. P. Woodruff sold, conveyed, and put A. D. Chamblin in possession of the one hundred acres, "home place," and including the dwelling.  The papers in themselves

are clear and explicit, and need no explanation by parol testimony, which is always more or less unreliable. Under these clear and solemn instruments the parties have lived for nearly twenty years, and all parol declarations before or after their date must be referred to them.

As it seems to us, it is a mistake to suppose that the papers only embrace *part* of the contract between the parties, and that it was admissible to prove by parol the whole of the contract, especially as to the uses to be made of said papers by the parties; as in the cases of *Kaphan* v. *Ryan*, 16 S. C., 356, and *Lipscomb* v. *Lipscomb*, 32 *Id.*, 243, and other cases of that class. Here the papers themselves need no explanations, but cover and embrace the whole subject matter, and show upon their face for what consideration and for what purpose they were given. The note was *not* to be paid until three years after the death of C. P. Woodruff and wife, Eliza, but that was equivalent to a declaration *that it should then be paid;* interest to be paid annually by the rent of the place now where I live (Chamblin). It is endorsed upon said note, that "interest has been paid to November 13, 1883." Under these circumstances, we cannot doubt that parol evidence, tending to show that Chamblin did not actually owe the $1,500 note, which was really required only as a security for the performance of their agreement by Chamblin and wife, was parol testimony offered to vary and alter written instruments, the plain, express terms of the note, and, therefore, was inadmissible.

The judgment of this court is, that the decree of the Circuit Court be affirmed, and the appeal be dismissed; and that the clerk of this court do furnish the judge of probate of Spartanburg County with a certified copy of this judgment.

A petition was filed for the rehearing of this case, upon which the following order was endorsed September 14, 1894, signed by the Chief Justice and Mr. Justice Pope,

PER CURIAM. A careful consideration of this petition leads us to apprehend, at least, that there may have been some questions material to the appellant's case overlooked in the decision heretofore filed; and, therefore, we think there

should be a rehearing of the whole case. It is, therefore, ordered, that this case be set down for a rehearing at the next term of this court, during the time assigned for the call of the cases from the Seventh Circuit.